09-2901-cv
Metropolitan Taxicab Board of Trade v. City of New York

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2009
(Argued: January 22, 2010     Decided: July 27, 2010)
Docket No. 09-2901-cv

------------------------------------------------------x

METROPOLITAN TAXICAB BOARD OF TRADE; MIDTOWN CAR LEASING CORP.; BATH CAB CORP.; RONART LEASING CORP.; GEID CAB CORP.; LINDEN MAINTENANCE CORP.; and ANN TAXI, INC.,

        Plaintiffs-Appellees,

MIDTOWN OPERATING CORP., SWEET IRENE TRANSPORTATION CO. INC., OSSMAN ALI, and KEVIN HEALY,

        Plaintiffs,

-- v. --

CITY OF NEW YORK; MICHAEL R. BLOOMBERG, in his offical capacity as Mayor of the City of New York; THE NEW YORK CITY TAXICAB & LIMOUSINE COMMISSION; MATTHEW W. DAUS, in his official capacity as Commissioner, Chair, and Chief Executive Officer of the TLC; PETER SCHENKMAN, in his official capacity as Assistant Commissioner of the TLC for Safety & Emissions; ANDREW SALKIN, in his official capacity as First Deputy Commissioner of TLC,

        Defendants-Appellants.

------------------------------------------------------x

B e f o r e :  WALKER, STRAUB, and LIVINGSTON, Circuit Judges.

The City of New York, the New York City Taxicab & Limousine Commission, and City officials appeal the grant of a preliminary injunction by the United States District Court for the Southern District of New York (Paul A. Crotty, Judge), that enjoined the enforcement of the City's recently amended lease rates for

-1-

taxicabs on the basis that the new rules are likely preempted under the Energy Policy and Conservation Act ("EPCA"), 49 U.S.C. § 32919(a), and the Clean Air Act ("CAA"), 42 U.S.C. § 7543(a). We conclude that the preliminary injunction was appropriate and therefore AFFIRM.

ELIZABETH S. SAYLOR, (Richard D. Emery and Matthew D. Brinckerhoff, on the brief), Emery Celli Brinckerhoff & Abady LLP, New York, NY, for Plaintiffs-Appellees.

SUSAN PAULSON (Francis F. Caputo, Michael A. Cardozo, Ramin Pejan, and Adam Stolorow, on the brief), Corporation Counsel of the City of New York, for Defendants-Appellants.

MARK B. STERN, Attorney, Appellate Staff, Civil Division, Department of Justice, Washington, D.C. (Robert S. Rivkin, General Counsel, Department of Transportation; Scott Fulton, General Counsel, Environmental Protection Agency; Tony West and Ignacia S. Moreno, Assistant Attorneys General; Preet Bharara, United States Attorney for the Southern District of New York; Jean-David Barnea, Assistant United States Attorney; R. Justin Smith and Peter McVeigh, Attorneys,

Environment and Natural Resources Division; H. Thomas Byron, III, Attorney, Appellate Staff, Civil Division, Department of Justice, <u>on the brief</u>), <u>for the United States as Amicus Curiae</u>.

JOHN M. WALKER, JR., <u>Circuit Judge</u>:

The Taxicab & Limousine Commission of New York City ("TLC") and several New York City officials (collectively, "the City") appeal the grant of a preliminary injunction by the United States District Court for the Southern District of New York (Paul A. Crotty, <u>Judge</u>), that enjoined the enforcement of the City's revisions to the maximum lease rates for taxicabs that effectively shifted fuel costs from drivers of fleet taxis to fleet owners to incentivize the use of hybrid-engine and fuel-efficient vehicles. The district court held that the new rules likely related to fuel economy standards and new vehicle emissions and were thus preempted under the Energy Policy and Conservation Act ("EPCA"), 49 U.S.C. § 32919(a), and the Clean Air Act ("CAA"), 42 U.S.C. § 7543(a). <u>Metro. Taxicab Bd. of Trade v. City of N.Y.</u>, 633 F. Supp. 2d 83, 105-06 (S.D.N.Y. 2009).

**BACKGROUND**

In December 2007, the City issued rules requiring that new taxicabs that were put into service on or after October 1, 2008

achieve at least 25 city miles per gallon of fuel, and those that were put into service beginning October 1, 2009 achieve 30 city miles per gallon (the "25/30 MPG rule").  In September 2008, the plaintiffs, including the Metropolitan Taxicab Board of Trade and several taxi fleet operators, sued the City, seeking to enjoin the 25/30 MPG rule on the basis that it violated preemption clauses in the EPCA and the CAA.[1]  The district court granted a preliminary injunction after determining that the 25/30 MPG rule related to fuel economy standards and was thus preempted by the EPCA.  Metro. Taxicab Bd. of Trade v. City of N.Y., No. 08 Civ. 7837, 2008 WL 4866021 (S.D.N.Y. Oct. 31, 2008).[2]  The City did not appeal that decision.

On March 26, 2009, the City repealed the 25/30 MPG rule, and issued new rules that regulated taxicab "lease caps" – the

---

[1] The EPCA states, in relevant part:  "[A] State or a political subdivision of a State may not adopt or enforce a law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under this chapter."  49 U.S.C. § 32919(a).

The CAA states, in relevant part:  "No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part."  42 U.S.C. § 7543(a).

[2] The district court, having "limited its review to the stated purpose of the rules, as published in the City Record," rejected the plaintiffs' argument under the CAA.  Metro. Taxicab, 2008 WL 4866021, at *14.  The district court held that the plaintiffs had failed "to show how the 25/30 Rules are a standard relating to the control of emissions from new motor vehicles." Id. (internal quotation marks omitted).

-4-

maximum dollar amount per shift for which taxis can be leased – to provide incentives for reduced fuel usage and cleaner taxis. Under the new rules, the lease caps for hybrid and "clean diesel" taxis are raised by $3 per shift.[3]  35 RCNY § 1-78(a)(3)(i).  At the same time, the new rules reduce the lease caps for non-hybrid, non-clean diesel vehicles, nearly all of which are Ford Crown Victorias, in three phases.  The new rules lower the per shift lease caps on the Crown Victorias, except those that are wheelchair accessible, by $4 on May 1, 2009; by $8 on May 1, 2010; and by $12 on May 1, 2011.  The current baseline lease caps from which these adjustments are made are:  $105 for all day shifts; $115 for night shifts on Sunday, Monday, and Tuesday; $120 for night shifts on Wednesday; and $129 for night shifts on Thursday, Friday, and Saturday.  35 RCNY § 1-78(a)(1).  After the third phase is implemented, the lease cap difference between hybrids and Crown Victorias would be $15 per shift, reflecting the $3 upward adjustment for the hybrid lease caps and the $12 downward adjustment for the Crown Victoria lease caps.  The new rules are designed to effectively shift fuel costs from taxi drivers, who currently pay for fuel, to fleet owners, who

---

[3] A hybrid vehicle for purposes of the new rules is a "commercially available mass production vehicle originally equipped by the manufacturer with a combustion engine system together with an electric propulsion system that operates in an integrated manner."  35 RCNY § 3-03.1(b). We use the term "hybrid" to encompass both hybrid vehicles as defined under the new rules and vehicles propelled by a "clean diesel" engine.

currently make vehicle purchasing decisions without the need to internalize fuel costs.

The plaintiffs amended their initial complaint to challenge these new rules and moved for a preliminary injunction against the enforcement of the Crown Victoria lease caps, again citing the preemption provisions of both the EPCA and the CAA. For obvious reasons, the plaintiffs did not challenge the $3 upward adjustment of the lease caps for hybrid taxis, which benefitted them, and that adjustment went into effect on May 1, 2009.

At an evidentiary hearing on the plaintiffs' motion, experts for both sides testified on the economic impact of the new rules on taxi fleet owners. The testimony of the plaintiffs' expert James Levinsohn tended to demonstrate that fleet owners would earn between $5,500 and $6,500 less per year for each Crown Victoria leased under the eventual $12 downward adjustment in comparison to leasing a hybrid under the $3 upward adjustment. The plaintiffs' expert estimated the current annual profit of leasing a Crown Victoria to be $8,518 per car per year. Thus, the lease cap reduction would lower profits by 65% to 75% for each Crown Victoria. The City did not challenge this estimated impact on plaintiffs' profits. The City's expert testified, however, that fleet owners could still make a "reasonable rate of return" on their purchase of a Crown Victoria notwithstanding the $12 downward adjustment.

On June 22, 2009, the district court granted a preliminary injunction on the grounds that the plaintiffs were likely to succeed on their claims that the new rules were preempted under the EPCA and the CAA.  The district court accepted the plaintiffs' expert's view of the economic impact of the new rules on fleet owners' profits and concluded that such a severe disparity in the expected profits from leasing a hybrid as compared to a Crown Victoria would leave the fleet owners with no rational alternative to leasing the former and thus amounted to a de facto mandate to purchase hybrid vehicles.  The district court found such a mandate to be related to both fuel economy standards and the reduction of vehicle emissions, and thus sufficiently likely to be preempted under the EPCA and the CAA so as to warrant a preliminary injunction.

The City appeals the grant of the preliminary injunction.

**DISCUSSION**

This Court reviews the grant of a preliminary injunction for abuse of discretion.  See Almontaser v. N.Y. City Dep't of Educ., 519 F.3d 505, 508 (2d Cir. 2008)(per curiam); Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007)(per curiam).  "A district court abuses its discretion when it rests its decision on a clearly erroneous finding of fact or makes an error of law."  Almontaser, 519 F.3d at 508.  In order to justify

a preliminary injunction, a movant must demonstrate 1) irreparable harm absent injunctive relief; 2) "either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor," id.; and 3) that the public's interest weighs in favor of granting an injunction. Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008). "When, as here, the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." County of Nassau, N.Y. v. Leavitt, 524 F.3d 408, 414 (2d Cir. 2008) (brackets and internal quotation marks omitted). In this case, the City's sole challenge to the preliminary injunction is that the plaintiffs are not likely to succeed on their preemption claims.

**I.    Preemption Under the EPCA**

The EPCA preemption clause states:

> [A] State or a political subdivision of a State may not adopt or enforce a law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under this chapter.

49 U.S.C. § 32919(a).

-8-

"Since [preemption] claims turn on Congress's intent, we begin as we do in any exercise of statutory construction with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs." N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995) (citations omitted). In the context of judging the scope of the preemption provision of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144(a), the Supreme Court has held that determining whether a state law relates to a preempted subject matter requires examining whether the challenged law contains a "reference" to the preempted subject matter or makes the existence of the preempted subject matter "essential to the law's operation." Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 324-25 (1997). If the law contains such a reference or makes the existence of preempted subject matter essential to the law's operation, then that state law is preempted by the federal law. See id. at 325 ("Where a State's law acts immediately and exclusively upon ERISA plans . . . , or where the existence of ERISA plans is essential to the law's operation . . . , that 'reference' will result in [preemption].").[4]

---

[4] Even if there is no reference to or essential incorporation of the preempted subject matter, courts must still ask whether the law nevertheless contains requirements that

As a threshold matter, we may rely on ERISA preemption precedents such as <u>Travelers</u> and <u>Dillingham</u> because the pertinent language in that statute is virtually identical to the text in the preemption provision of the EPCA, which preempts state laws that are "related to fuel economy standards." <u>Compare</u> 29 U.S.C. § 1144(a), <u>with</u> 49 U.S.C. § 32919(a). Although the same "relate[] to" provision arises in different preemption statutes, we discern no basis for concluding that the meaning of the language in each provision was not intended to be the same. <u>Cf.</u> <u>Travelers Indem. Co. v. Bailey</u>, 129 S. Ct. 2195, 2203 (2009) (noting generally that, "[i]n a statute, 'the phrase "in relation to" is expansive'" and applying that statutory reading to the interpretation of a private settlement agreement). We note that the City itself relies on <u>Travelers</u> in challenging the district court's ruling. <u>See</u> Appellants Br. at 57, 60. For purposes of assessing preemption under the EPCA, the Supreme Court's discussions of the phrase "relate to" in ERISA cases is directly applicable.

Thus, our first inquiry in determining whether the new rules

---

"amount[] to 'connection[s] with'" the preempted subject matter. <u>Dillingham</u>, 519 U.S. at 328 (second alteration in original) (quoting <u>Travelers</u>, 514 U.S. at 658). However, because we find that the City's new rules contain a reference to fuel economy standards or make fuel economy standards essential to the operation of those rules, we need not specifically address whether the new rules have a connection with fuel economy standards.

relate to "fuel economy standards," 49 U.S.C. § 32919(a), is whether they contain a reference to fuel economy standards or make fuel economy standards essential to the operation of those rules. Dillingham, 519 U.S. at 324-25. We conclude that they do.

The new rules expressly rely on a distinction between hybrid and non-hybrid vehicles. 35 RCNY § 1-78(a)(3) (providing for the upward and downward lease cap adjustments on hybrid and non-hybrid vehicles, respectively). The requirement that a taxi be a hybrid in order to qualify for the upwardly adjusted lease cap does nothing more than draw a distinction between vehicles with greater or lesser fuel-efficiency. The equivalency of the term "hybrid" with "greater fuel efficiency" for purposes of the new rules is self-evident. First, the EPCA specifically requires the separate consideration of "dual fueled" vehicles, including hybrids, in the determination of national fuel economy standards. See 49 U.S.C. § 32901(a)(1)(J) (defining "electricity" as one form of "alternative fuel"); see also id. § 32905(b) (requiring the Administrator of the Environmental Protection Agency to measure the fuel economy of certain "dual fueled" automobile models in part with reference to the fuel economy of that model when operating on "alternative fuel"). Second, imposing reduced lease caps solely on the basis of whether or not a vehicle has a hybrid engine has no relation to an end other than an improvement

in fuel economy across the taxi fleets operating in New York City.

Indeed, the City is unable to identify any plausible alternative reason for the imposition of such an engine-based rule. The City argues that the new rules "correct[] a structural problem with the standard vehicle lease arrangement that artificially insulates fleet owners from fuel costs." Appellants Br. at 1. This proffered reason, however, still aims at the improvement of fuel economy, which underlies the "structural problem" relied upon by the City. This argument, moreover, ignores the City's mechanism for its structural correction, which is to shift costs solely on the basis of a vehicle's level of fuel efficiency, i.e., whether the vehicle is a hybrid. Indeed, the City's current list of approved vehicles includes every car approved for use under the now-repealed 25/30 MPG rule. The City's list of approved vehicles under the new rules, with the exception of wheelchair accessible vehicles (which are exempt from the lease cap adjustments) and the Crown Victoria, are either hybrids or achieve at least 25 miles per gallon. See New York City Taxi & Limousine Commission, Taxicab Vehicles in Use, available at http://www.nyc.gov/html/tlc (follow "Safety & Emissions" hyperlink; then follow "Taxicab Vehicles In Use" hyperlink) (last visited June 1, 2010). The virtually complete overlap of the approved vehicles under the 25/30 MPG rule and the

-12-

new rules underlines further that, in furtherance of the City's regulatory purpose, "hybrid" is simply a proxy for "greater fuel efficiency." In sum, the new rules are not applicable to gasoline costs in general, nor are they neutral to the fuel economy of the vehicles to which they apply. Rather, they are directly related to fuel economy standards because they rely on fuel economy, and on nothing else, as the criterion for determining the applicable lease cap.

Because the parties appear to have assumed before the district court that the new rules did not directly reference fuel economy standards or incorporate those standards into the new rules' operation, they and the district court focused on whether the new rules effectively mandate the use of fuel efficient vehicles through their economic impact. In that context, the district court rejected the City's argument that the new rules are permissible because they only provide an incentive, rather than create a de facto mandate, for the purchase of hybrid vehicles. Appellants Br. at 7, 28. This attention to economic impact was misguided, however, because the rules in question directly regulate the relevant preempted subject matter.

## II. The Plaintiffs' Preliminary Injunction

Although we find the district court's conclusion that the rules effected a mandate irrelevant to our analysis, the district

court's preliminary injunction was appropriate. The City does not challenge the district court's determination that the plaintiffs face irreparable harm absent injunctive relief, nor does it challenge the preliminary injunction on either the balance of hardships or public interest prongs of the preliminary injunction standard. The sole issue before us is whether the plaintiffs have established a likelihood of success on the merits. Leavitt, 524 F.3d at 414.

The City's new rules, based expressly on the fuel economy of a leased vehicle, plainly fall within the scope of the EPCA preemption provision. The plaintiffs, therefore, have demonstrated a likelihood, indeed a certainty, of success on the merits, and we affirm the district court's preliminary injunction on this ground. Because preemption under the EPCA is sufficient to affirm the preliminary injunction, there is no need to reach the question of whether the preemption provision of the CAA would invalidate the City's new rules.

## CONCLUSION

We AFFIRM the district court's order granting the preliminary injunction.