10-3165-cv(L)
Red Earth LLC v. USA

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2010

(Argued: November 1, 2010    Decided: September 20, 2011)

Docket Nos. 10-3165-cv(L), 10-3191-cv(XAP), 10-3213-cv(XAP)

-------------------------------------------------------x

RED EARTH LLC, D/B/A SENECA SMOKESHOP, AARON J.
PIERCE, SENECA FREE TRADE ASSOCIATION,

Plaintiffs - Appellees - Cross-Appellants,

-- v. --

UNITED STATES OF AMERICA, ERIC H. HOLDER, JR., IN HIS
OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED
STATES, UNITED STATES DEPARTMENT OF JUSTICE, JOHN E.
POTTER, IN HIS OFFICIAL CAPACITY AS POSTMASTER
GENERAL AND CHIEF EXECUTIVE OFFICER OF THE UNITED
STATES POSTAL SERVICE, UNITED STATES POSTAL SERVICE,

Defendants - Appellants - Cross-Appellees.

-------------------------------------------------------x

B e f o r e :  JACOBS, WALKER, and CABRANES, Circuit Judges.

Appeal from an order of the Western District of New York

(Richard J. Arcara, Judge) granting a preliminary injunction to

stay enforcement of provisions of the Prevent All Cigarette

Trafficking Act ("PACT Act") that require mail-order cigarette

sellers to pay state excise taxes.  The government argues that

the district court erred in concluding that plaintiffs were likely to succeed on their claim that the PACT Act's provision requiring out-of-state tobacco sellers to pay state excise taxes regardless of their contact with that state violates due process. We affirm the district court's order granting the preliminary injunction.

AFFIRMED.

MICHAEL P. ABATE, Attorney, Appellate Staff, Department of Justice Civil Division, Washington, D.C. (Tony West, Assistant Attorney General, William J. Hochul, Jr., United States Attorney for the Western District of New York, Mark B. Stern, Alisa B. Klein, Attorneys, Appellate Staff, Department of Justice Civil Division, on the brief), for Defendants-Appellants-Cross-Appellees.

LISA A. COPPOLA, Rupp, Baase, Pfalzgraf, Cunningham & Coppola LLC, Buffalo, NY for Plaintiffs-Appellees-Cross-Appellants Red Earth LLC, d/b/a Seneca Smokeshop and Aaron J. Pierce.

HOWARD M. RADZELY, Morgan, Lewis & Bockius LLP, Washington, D.C. (R. Edward Cruz, Russell R. Bruch, Leni D. Battaglia, Morgan, Lewis & Bockius LLP, Washington, D.C., Daniel B. Moar, Goldberg Segalla LLP, Buffalo, NY, on the brief), for Plaintiff-Appellee-Cross-Appellant Seneca Free Trade Association.

Richard T. Sullivan, Harris Beach PLLC, Buffalo, NY, for Amici Curiae

National Association of Convenience Stores and New York Association of Convenience Stores.

Allison M. Zieve (Gregory A. Beck, on the brief), Public Citizen Litigation Group, Washington, DC, for Amici Curiae American Cancer Society, American Cancer Society Cancer Action Network, American Heart Association, American Legacy Foundation, American Lung Association and Campaign for Tobacco-Free Kids.

Michael A. Cardozo, Corporation Counsel of the City of New York (Eric Proshansky, Victoria Scalzo, Aaron M. Bloom, William H. Miller, Assistant Corporation Counsel, on the brief), New York, NY, for Amicus Curiae City of New York.

Carol E. Heckman, Harter Secrest & Emery LLP, Buffalo, NY (Riyaz A. Kanji, Kanji & Katzen, PLLC, Ann Arbor, Michigan, on the brief), for Amicus Curiae Seneca Nation of Indians.

Andrew M. Cuomo, Attorney General of the State of New York (Barbara D. Underwood, Solicitor General, Alison J. Nathan, Special Counsel to the Solicitor General, Benjamin N. Gutman, Deputy Solicitor General, on the brief), New York, NY, for Amici Curiae States of New York, Alaska, Arizona, Arkansas, California, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota, Ohio,

Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Washington, West Virginia, and Wyoming.

PER CURIAM:

The government appeals from a July 30, 2010 order of the District Court for the Western District of New York (Richard J. Arcara, Judge) granting a preliminary injunction to stay enforcement of provisions of the Prevent All Cigarette Trafficking Act ("PACT Act") requiring mail-order cigarette sellers to pay state excise taxes. The government argues that the district court erred in concluding that plaintiffs were likely to succeed on the merits of their claim that the PACT Act's provision requiring out-of-state tobacco sellers to pay state excise taxes, regardless of their contact with that state, violates the Constitution's Due Process Clause. Because we find the district court's entry of the preliminary injunction was not an abuse of discretion, we affirm.

**BACKGROUND**

The PACT Act, signed into law on March 31, 2010, imposes strict restrictions on the "delivery sale" of cigarettes and smokeless tobacco. Pub. L. No. 111-154, § 2(a), 124 Stat. 1087, 1088 (2010). A "delivery sale" occurs when the buyer and seller are not in each other's physical presence at the time the buyer requests or receives the cigarettes, as when cigarettes are

ordered over the Internet and delivered by mail. 15 U.S.C. § 375(5). In order to "prevent tobacco smuggling" and "ensure the collection of all tobacco taxes," the statute demands that delivery sellers "comply with the same laws that apply to law-abiding tobacco retailers." 124 Stat. at 1087-88. To that end, the PACT Act requires delivery sellers to pay excise taxes, obey licensing and tax-stamping requirements, and otherwise comply with state and local tobacco laws "as if the delivery sales occurred entirely within the specific State and place" where the tobacco product is delivered. 15 U.S.C. § 376a(a)(3).

Red Earth, LLC ("Red Earth") is a tobacco retail business and "delivery seller" under the PACT Act that is located on the Cattaraugus Indian Reservation in the territory of the Seneca Nation of Indians in New York State. The business is owned by Aaron J. Pierce, an enrolled member of the Seneca Nation. Red Earth is a member of the Seneca Free Trade Association ("SFTA"), a non-profit organization that represents hundreds of businesses licensed by the Seneca Nation. The SFTA's membership includes at least 140 tobacco retailers that sell and ship cigarettes to customers across the United States.

Red Earth and other SFTA members, as Native American retailers operating in Indian country, can purchase cigarettes and other tobacco products free of state and local excise taxes. See Dep't of Taxation & Fin. v. Milhelm Attea & Bros., Inc., 512

5

U.S. 61, 64 (1994). Prior to the PACT Act, those tax savings were passed along to their customers: SFTA retailers sold tax-free cigarettes to customers via phone, fax, and the Internet, and shipped them by mail. For these out-of-state sales, state and local governments could collect excise taxes only directly from the customers, using sales reports that out-of-state tobacco sellers have to file with state tobacco tax administrators under the Jenkins Act of 1949.[1] See Hemi Group, LLC v. City of New York, 130 S. Ct. 983, 987 (2010). Red Earth's "business model," according to Pierce, is "predicated upon" selling cigarettes "free of New York State sales taxes by utilizing the Internet, telephone, and mail."

The PACT Act does away with this business model by imposing on delivery sellers the burden of collecting taxes. Cigarette products cannot be sold or delivered until any state or local excise tax "has been paid," with "required stamps or other indicia that the excise tax has been paid . . . properly affixed or applied" to the product. 15 U.S.C. § 376a(d)(1). The statute bars the delivery of cigarettes or smokeless tobacco through the U.S. Postal Service, 18 U.S.C. § 1716E(a)(1), and imposes strict shipping, packaging, age-verification, and record-keeping requirements, 15 U.S.C. § 376a(b), (c). Violators are subject to

---

[1] The PACT Act amends the Jenkins Act. See 124 Stat. at 1088, 1090, 1091, 1100, 1101.

civil and criminal penalties, including, for the first violation, up to three years' imprisonment and fines up to the greater of $5,000 or two percent of the delivery seller's gross sales of tobacco products during the one-year period ending on the date of the violation. See 15 U.S.C. § 377(a)(1), (b)(1).

On June 25, 2010, four days before the PACT Act was to go into effect, Pierce and Red Earth challenged the statute's constitutionality in a complaint filed in the Western District of New York. The district court temporarily stayed enforcement of the statute as to Pierce and Red Earth. After a similar complaint was filed by the SFTA, the district court consolidated the actions and expanded the stay to protect the SFTA's full membership.

On July 30, 2010, the district court, finding that Red Earth, Pierce, and the SFTA (collectively "plaintiffs") were likely to succeed on the merits of their due process claim, entered a preliminary injunction that stayed enforcement of the PACT Act provisions requiring delivery sellers to prepay excise taxes and comply with all laws "as if the delivery sales occurred entirely" in the place of delivery. See 15 U.S.C. § 376a(a)(3)-(4), (d). Adopting as its premise that due process requires an out-of-state seller to maintain minimum contacts with a state before the state can subject it to taxation, see Quill Corp. v. North Dakota, 504 U.S. 298, 306-08 (1992), the district court

7

found that the PACT Act's mandate that delivery sellers pay state taxes without regard to their contact with that state effectively "legislate[d] the due process requirement out of the equation." Red Earth LLC v. United States, 728 F. Supp. 2d 238, 252 (W.D.N.Y. 2010). The district court left undisturbed the remainder of the PACT Act, including its non-mailability and age-verification provisions. The district court further concluded that plaintiffs failed to show a likelihood of success as to their equal protection claims, and that they lacked standing to bring a Tenth Amendment claim. The government appeals, and plaintiffs cross-appeal, from that order.

**DISCUSSION**

We review a district court's entry of preliminary injunction for abuse of discretion. Green Party v. N.Y. State Bd. of Elections, 389 F.3d 411, 418 (2d Cir. 2004). A district court abuses its discretion when its decision is arbitrary or is based on "an error of law" or "a clearly erroneous finding of fact." Almontaser v. N.Y. City Dep't of Educ., 519 F.3d 505, 508 (2d Cir. 2008) (per curiam). To obtain a preliminary injunction, the moving party must demonstrate "(1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and (3) that the public's

8

interest weighs in favor of granting an injunction." Metro. Taxicab Bd. of Trade v. City of New York, 615 F.3d 152, 156 (2d Cir. 2010) (internal quotation marks and citations omitted). When, as here, the preliminary injunction "will affect government action taken in the public interest pursuant to a statutory or regulatory scheme," it "should be granted only if the moving party meets the more rigorous likelihood-of-success standard." Id. (quoting County of Nassau v. Leavitt, 524 F.3d 408, 414 (2d Cir. 2008)).

On appeal, the government argues that the district court abused its discretion in entering the preliminary injunction because plaintiffs failed to establish a likelihood of success on the merits of their due process claim. Plaintiffs, in cross-appeals, challenge the district court's assessment of their equal protection and Tenth Amendment claims. We address each appeal in turn.

**I.   The Government's Appeal**

A.

The Due Process Clause of the Fourteenth Amendment places limits on a state's ability to tax out-of-state vendors. Principally, "due process requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." Miller Bros. Co. v. Maryland, 347 U.S. 340, 344-45 (1954). For purposes of a delivery seller's

9

obligation to comply with state tax laws, the PACT Act creates the fiction that every delivery sale occurs "entirely within the specific State and place" where the tobacco product is delivered. 15 U.S.C. § 376a(a)(3).  This action raises the question of whether Congress can, consistent with constitutional due process, require a vendor to submit to the taxing jurisdiction of any state into which it makes at least one sale, without regard to the extent of that vendor's contact with the state.

The district court, relying on Quill Corp. v. North Dakota, 504 U.S. 298 (1992), and applying the preliminary injunction standard, concluded that Congress most likely cannot do so.  In Quill, the Supreme Court overruled its previous due process holdings to the extent they "indicated that the Due Process Clause requires physical presence in a State for the imposition of duty to collect a use tax."  Id. at 308.  Twenty-five years earlier, the Supreme Court had refused to obliterate "the sharp distinction . . . between mail order sellers with retail outlets, solicitors, or property within a State," who could be subject to state taxes, "and those who do no more than communicate with customers in the State by mail or common carrier as part of a general interstate business," who could not.  Nat'l Bellas Hess, Inc. v. Dep't of Revenue, 386 U.S. 753, 758 (1967).

That distinction gave way in Quill.  Recognizing that its due process jurisprudence had "evolved substantially" since

10

Bellas Hess, "particularly in the area of judicial jurisdiction," the Court, in the area of taxation, analogized its due process analysis to its jurisdictional holdings. Quill, 504 U.S. at 307-08. With regard to personal jurisdiction, the Supreme Court had "abandoned more formalistic tests that focused on a defendant's 'presence' within a State in favor of a more flexible inquiry into whether a defendant's contacts with the forum made it reasonable, in the context of our federal system of Government, to require it to defend the suit in that State." Id. at 307. The relevant inquiry asked "whether a defendant had minimum contacts with the jurisdiction 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. at 308 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Physical presence within a state was not, therefore, a prerequisite to that state's exercise of personal jurisdiction over a foreign corporation, provided that the corporation had "purposefully avail[ed] itself of the benefits of an economic market in the forum State." Id. at 307-08.

The Supreme Court in Quill relied on "[c]omparable reasoning" to answer the question before it: whether North Dakota could require an out-of-state mail-order house "engaged in continuous and widespread solicitation of business" within the state to collect from its customers, and remit to the state, a

11

use tax.  Id. at 301, 308.  Taxation in that context comported with due process, the Court concluded, because it was beyond dispute that the seller had "purposefully directed its activities at North Dakota residents, that the magnitude of those contacts [was] more than sufficient for due process purposes, and that the use tax [was] related to the benefits [the seller] receive[d] from access to the State."  Id. at 308.

In the case before us, the district court observed that the PACT Act "automatically subjects" delivery sellers to the laws of the forum state "notwithstanding the presence or absence of any other contacts with that forum."  Red Earth, 728 F. Supp. 2d at 251.  Congress, in other words, was "broadening the jurisdictional reach of each state and locality without regard to the constraints imposed by the Due Process Clause," which the district court concluded it "cannot do."  Id. at 252.  On that basis, the district court found that plaintiffs had shown a likelihood of success on the merits of their due process claim. The government, on appeal, contests this conclusion.

Under the deferential abuse of discretion standard, as long as the district court did not act arbitrarily, we will overturn the preliminary injunction only if the district court made an error of law or a clearly erroneous finding of fact.  We find neither.  The Supreme Court observed in Quill that, while Congress "may authorize state actions that burden interstate

12

commerce," it "does not similarly have the power to authorize violations of the Due Process Clause." Quill, 504 U.S. at 305. The PACT Act requires a seller to collect state and local taxes based on its making of one delivery, but the federal courts have for decades steered away from the question of whether a single sale is enough to satisfy the requirements of due process. The Supreme Court has never found "that a single isolated sale . . . is sufficient." J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2792 (2011) (Breyer, J., concurring in the judgment). Nor has it held that a single sale into a state is insufficient for due process purposes, although its "previous holdings suggest" as much. Id. Where "the underlying constitutional question is close," a court reviewing the issuance of a preliminary injunction "should uphold the injunction and remand for trial on the merits." Ashcroft v. ACLU, 542 U.S. 656, 664-65 (2004). Because the district court reached a reasonable conclusion on a close question of law, there is no need for us to decide the merits at this preliminary stage. We find that the district court acted within its discretion in entering the injunction here.

B.

The government also contends that the district court abused its discretion by entering an injunction that is too broad in scope. The injunction applies only to three provisions of the

13

PACT Act: (1) 15 U.S.C. § 376a(a)(3), which requires delivery sellers to comply with all state and local laws, including those imposing excise taxes, as if the delivery sales occurred entirely within that state; (2) § 376a(d), which requires delivery sellers to pay state and local tobacco taxes before delivering their products; and (3) § 376a(a)(4), which mandates compliance with § 376a(d). Although only the PACT Act's tax-collecting provisions present a due process problem, the district court also enjoined the mandate that delivery sellers comply with "laws imposing . . . restrictions on sales to minors" and "other . . . legal requirements relating to the sale, distribution, or delivery of cigarettes or smokeless tobacco" as if the sales occurred entirely within that state. 15 U.S.C. § 376a(3)(C)-(D).

As the district court noted in denying the government's motion for a stay pending appeal, the injunction was crafted to preserve the age verification procedures that appear elsewhere in the PACT Act. Those provisions bar delivery sellers from selling or delivering tobacco products to anyone under the minimum age set by applicable law at the place of delivery, mandate that the purchaser or another adult sign for the product upon delivery, and require delivery sellers to verify the purchaser's age using a database. 15 U.S.C. § 376a(b)(4). Any defect in the injunction's application to one provision governing sales to minors is effectively nullified by its preservation of separate

14

restrictions to the same effect.

The Supreme Court has instructed courts to "refrain from invalidating more of the statute than is necessary." Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684 (1987) (quoting Regan v. Time, Inc., 468 U.S. 641, 652 (1984) (plurality opinion)). "Whenever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of this court to so declare, and to maintain the act in so far as it is valid." Id. (quoting Regan, 468 U.S. at 652) (alterations omitted). The district court heeded that guidance by limiting its injunction to three provisions of the PACT Act, all of which impose on delivery sellers the obligation to collect state and local taxes without regard to due process. Although the district court arguably could have wielded its scalpel even more finely – for example, by excluding § 376a(a)(3)(C), regarding laws imposing "restrictions on sales to minors" - its failure to do so was not an abuse of discretion and is of no practical consequence.

C.

The government assails the district court's calculus as to the balance of equities and the public interest. The district court concluded that the public interest favors injunctive relief due to the PACT Act's threatened economic impact on the delivery sellers, many of whom claim they do not have the financial

15

wherewithal to comply with the PACT Act's requirements and would go out of business if the statute were enforced. Inaction by the court would therefore confront delivery sellers with "the Hobson's choice of ceasing what they believe to be lawful business activities, or continuing to engage in those activities while facing the threat of criminal prosecution if they are wrong." Red Earth, 728 F. Supp. 2d at 259. The government contends that these threats are overstated, as compliance with the PACT Act demands, for the vast majority of states, simple reliance on state-licensed stamping agents to apply tax stamps to the product. Furthermore, the PACT Act serves the public interest by supporting tobacco control efforts and discouraging youth demand for cigarettes, goals that, in the government's view, outweigh unsubstantiated claims of economic harm.

We agree with the district court that the equities tip in the plaintiffs' favor because of the adverse economic effects that will result from enforcement of the statute in violation of the due process rights they may have. The district court therefore did not abuse its discretion in concluding that the potential for economic harm to plaintiffs tipped the scales of public interest in favor of enjoining the problematic provisions.

16

## II. Plaintiffs' Cross Appeals

### A.

Plaintiffs allege that the PACT Act violates the Fifth Amendment's equal protection guarantees because it intentionally targets Native Americans, and because it exempts only residents of Alaska and Hawaii from the statute's exclusion on the use of the mails. The district court concluded that plaintiffs' equal protection claims were unlikely to succeed on the merits. Red Earth and Pierce argue that the district court erred as to the intentional discrimination claim, and the SFTA asserts that the district court erred as to the non-mailability claim.

Red Earth and Pierce allege that the PACT Act, although a facially neutral statute, was motivated by discriminatory animus towards Native Americans and that its application results in a discriminatory effect. See Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264-65 (1977) (requiring proof of "racially discriminatory intent" in addition to "racially disproportionate impact" to find that official action violates equal protection). Discriminatory intent "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Personnel Adm'r v. Feeney, 442 U.S. 256, 279 (1979).

The district court recognized that the PACT Act would have a

17

disproportionate effect on Native Americans, who comprise at least 80 percent of delivery sellers. The district court also acknowledged plaintiffs' identification of evidence in the legislative history that they characterized as evincing animus towards Native Americans, such as laughter by some present when a letter from the Seneca Nation was introduced into the congressional record. However, the district court found that Congress's intent in passing the PACT Act was to curtail what it believed to be improper assertions of Native American sovereignty, not to purposefully discriminate against Native Americans as a group. As plaintiffs have failed to show that this finding was clearly erroneous, the district court did not abuse its discretion in deeming plaintiffs' intentional discrimination claim unlikely to succeed on the merits.

The SFTA's equal protection challenge is based on an exception to the PACT Act's classification of all cigarettes and smokeless tobacco as "nonmailable." 18 U.S.C. § 1716E(a)(1). Although the statute prohibits the U.S. Postal Service from accepting cigarettes and smokeless tobacco for delivery, "mailings within the State of Alaska or within the State of Hawaii" are excepted from that restriction. Id. § 1716E(b)(2). Plaintiffs argued that this provision irrationally favors residents of Alaska or Hawaii over similarly situated residents of other states. The district court rejected this challenge,

18

finding the exception was rationally designed to ensure that residents of remote areas of Alaska and Hawaii could obtain cigarettes.

On appeal, the SFTA reiterates that the exception for Alaska and Hawaii is over-inclusive, in that it applies to residents of cities like Anchorage and Honolulu, and under-inclusive, as it excludes similarly situated residents of remote regions in other states.  However, "rational basis review allows legislatures to act incrementally and to pass laws that are over (and under) inclusive without violating" equal protection.  Hayden v. Paterson, 594 F.3d 150, 171 (2d Cir. 2010).  A classification "neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity." Heller v. Doe, 509 U.S. 312, 319 (1993).  It will be upheld as long as there is "any reasonably conceivable state of facts that could provide a rational basis for the classification."  Id. at 320 (quoting FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993)).  The district court properly concluded that this exception falls well within the bounds of rationality.

B.

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U.S. Const. amend. X.

19

Plaintiffs claim that, by attempting to levy state and local taxes, Congress is acting outside its enumerated powers in violation of the Tenth Amendment.  The district court, relying on Brooklyn Legal Services Corporation B v. Legal Services Corporation, 462 F.3d 219, 234-36 (2d Cir. 2006), concluded that plaintiffs lack standing to assert a Tenth Amendment claim.

In Brooklyn Legal Services, after deciding that the question of standing under the Tenth Amendment was controlled by Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 144 (1939), we found that plaintiffs lacked standing because "no plaintiff . . . represent[ed] a state or its instrumentality." See Brooklyn Legal Services, 462 F.3d at 234-35.  In United States v. Bond, the Third Circuit, while recognizing a circuit split as to the issue of standing under the Tenth Amendment, similarly relied on Tennessee Electric in concluding that the individual plaintiff lacked standing to assert a Tenth Amendment claim.  581 F.3d 128, 136-38 (3d Cir. 2009), cert. granted, 131 S. Ct. 455 (2010).  But see Gillespie v. City of Indianapolis, 185 F.3d 693, 703-04 (7th Cir. 1999) (allowing private parties to bring Tenth Amendment challenges), cert. denied, 528 U.S. 1116 (2000).

During the pendency of this appeal, the Supreme Court reversed the Third Circuit, resolving this circuit split.  In

*Bond v. United States*, 131 S. Ct. 2355 (2011), the Court held that an individual can have standing to pursue a Tenth Amendment claim.  "[W]here the litigant is a party to an otherwise justiciable case or controversy, she is not forbidden to object that her injury results from disregard of the federal structure of our Government."  *Id.* at 2366-67.  Red Earth and the SFTA, in letters filed with the court pursuant to Federal Rule of Appellate Procedure 28(j), both state that *Bond* provides an additional basis for upholding the preliminary injunction issued by the district court.  The government has not responded to plaintiffs' letters.

Bond effectively overrules *Brooklyn Legal Services*, and thus abrogates the basis for the district court's resolution of the Tenth Amendment question.  Because the district court concluded that plaintiffs were unlikely to succeed on their Tenth Amendment claim based on their apparent lack of standing, it did not otherwise address the claim's viability on the merits.  As we affirm the preliminary injunction on other grounds, and plaintiffs do not contend that *Bond* warrants any expansion of that injunction, the outcome of this appeal is unaffected by the Supreme Court's resolution of *Bond*.  While it now appears that plaintiffs have standing to raise the Tenth Amendment claim, we have no need to address the likelihood that plaintiffs will succeed as to their Tenth Amendment claim and decline to do so.

21

**CONCLUSION**

For the foregoing reasons, the district court's order entering the preliminary injunction is AFFIRMED. The government's request to lift the injunction is DENIED, and plaintiffs' request to expand the injunction is also DENIED.