15-2334-cv(L)
Friends of The East Hampton Airport,Inc v. Town of East Hampton

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2015

(Argued:  June 20, 2016     Decided: November 4, 2016)

Docket Nos. 15-2334-cv(L), 15-2465-cv(XAP)

FRIENDS OF THE EAST HAMPTON AIRPORT, INC., ANALAR CORPORATION, ASSOCIATED AIRCRAFT GROUP, INC., ELEVENTH STREET AVIATION LLC, HELICOPTER ASSOCIATION INTERNATIONAL, INC., HELIFLITE SHARES, LLC, LIBERTY HELICOPTERS, INC., SOUND AIRCRAFT SERVICES, INC., NATIONAL BUSINESS AVIATION ASSOCIATION, INC.,

*Plaintiffs-Appellees-Cross-Appellants*,

—v.—

TOWN OF EAST HAMPTON,

*Defendant-Appellant-Cross-Appellee.*

Before:

JACOBS, CALABRESI, RAGGI, *Circuit Judges.*

On cross appeals from an order of the United States District Court for the Eastern District of New York (Seybert, *J.*) granting in part and denying in part a motion for a preliminary injunction to bar enforcement of three local laws limiting access to the town's airport operations, the defendant municipality challenges the court's determination that the enactment of one law, placing a numerical limit on weekly flights, was an unreasonable exercise of the town's reserved proprietary authority under the Airline Deregulation Act of 1978, *see* 49 U.S.C. § 41713(b)(3). Plaintiffs defend that decision, and challenge the partial denial of the preliminary injunction, arguing that federal preemption precludes enforcement of all three laws because they were enacted in violation of the procedural requirements of the Airport Noise and Capacity Act of 1990, *see* 49 U.S.C. §§ 47521–47534.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

———————————

> KATHLEEN M. SULLIVAN (W. Eric Pilsk, Kaplan, Kirsch & Rockwell, LLP, Washington, D.C.; David M. Cooper, Quinn Emanuel Urquhart & Sullivan, LLP, New York, New York, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, New York, New York, *for Defendant-Appellant-Cross-Appellee*.

LISA R. ZORNBERG (Helen A. Gredd, Jonathan D. Lamberti, *on the brief*), Lankler Siffert & Wohl LLP, New York, New York, *for Plaintiffs-Appellees-Cross-Appellants*.

Lauren L. Haertlein, General Aviation Manufacturers Association, Washington, D.C., *Amicus Curiae in support of Plaintiffs-Appellees-Cross-Appellants*.

REENA RAGGI, *Circuit Judge*:

We here consider cross appeals from an order of the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge*), granting in part and denying in part a motion for a preliminary injunction to bar enforcement of three local laws restricting operations at a public airport located in and owned and operated by the Town of East Hampton, New York (the "Town" and the "Airport"). *See Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 152 F. Supp. 3d 90 (E.D.N.Y. 2015). Plaintiffs, who sought the injunction, represent various aviation businesses that use the Airport and representative entities. The district court enjoined the enforcement of only one of the challenged laws—imposing a weekly flight limit—concluding that it reflected a likely unreasonable exercise of the Town's reserved proprietary authority,

3

which is excepted from federal preemption by the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713(b)(3).

The Town challenges the district court's rejection of this proprietor exception with respect to the weekly flight-limit law. Plaintiffs defend the district court's decision as to that law, and, on cross appeal, argue that enforcement of all three challenged laws should have been enjoined. Specifically, plaintiffs contend that none of the challenged laws falls within the ADA's proprietor exception to federal preemption because the Town failed to comply with the procedural requirements of the Airport Noise and Capacity Act of 1990 ("ANCA"), *see* 49 U.S.C. §§ 47521–47534, in enacting them. The Town counters that plaintiffs cannot invoke equity jurisdiction to enforce ANCA's procedural requirements, and that compliance with these procedures is not required because the Town is willing to forgo future federal funding for its airport.

We identify merit in plaintiffs' ANCA argument and resolve these cross appeals on that basis without needing to address the Town's proprietor exception challenge. Specifically, we conclude that plaintiffs (1) can invoke equity jurisdiction to enjoin enforcement of the challenged laws; and (2) are

4

likely to succeed on their preemption claim because it appears undisputed that the Town enacted all three laws without complying with ANCA's procedural requirements, which apply to public airport operators regardless of their federal funding status.

We affirm the district court's order insofar as it enjoins enforcement of the weekly flight-limit law, but we vacate the order insofar as it declines to enjoin enforcement of the other two challenged laws. In so ruling, we express no view as to the wisdom of the local laws at issue. We conclude only that federal law mandates that such laws be enacted according to specified procedures, without which they cannot claim the proprietor exception to federal preemption. Accordingly, we remand the case to the district court for the entry of a preliminary injunction as to all three laws and for further proceedings consistent with this opinion.

## I.     Background[1]

### A.     The East Hampton Airport

The Town of East Hampton, located approximately 100 miles east of New York City, is a popular summer vacation destination on the south shore of Long Island. Its year-round population of approximately 21,500 more than quadruples to approximately 94,000 in the months of May through September (the "Season"). This results in increased traffic, including air traffic, and attendant noise.

The Town owns and operates East Hampton Airport (the "Airport"), which is a public use, general aviation facility servicing domestic and international flights. The Federal Aviation Administration ("FAA") has designated the Airport as a "regional" facility "significant" to the national aviation system. J.A. 117. Although the Airport provides no scheduled commercial service, it serves a range of private and chartered helicopters and fixed-wing aircraft. In 2014, the Airport supported 25,714 operations, *i.e.*, take-

---

[1] Because discovery has not yet taken place, the stated background derives from plaintiffs' amended complaint and from the declarations submitted by the parties in litigating plaintiffs' preliminary injunction motion.

offs or landings, by such aircraft. On the busiest day of that calendar year, Friday, July 25, 2014, the Airport supported 353 operations between 3:04 a.m. and 11:08 p.m.

B.      The Town's Efforts To Control Airport Noise

For more than a decade before the enactment of the laws at issue in this action, Town residents had expressed concern about Airport noise. Counsel for the Town, however, repeatedly advised the Town that federal law placed significant limitations on its ability to restrict Airport access to reduce noise.

1.      Federal Limitations on Local Noise Regulation

a.      The Town's Receipt of AIP Grants

The Town was advised that its obligation to comply with federal law derived, in part, from its receipt of federal funding under the Airport and Airway Improvement Act of 1982 (the "AAIA"), Pub. L. No. 97-248, 96 Stat. 671 (recodified at 49 U.S.C. § 47101 *et seq.*). The AAIA established the Airport Improvement Program (the "AIP"), which extends grants to airports that, in return, provide statutorily mandated assurances to remain publicly accessible and to abide by federal aviation law and policy. *See* 49 U.S.C. §§ 47107(a)(1), 47108(a).

The Town's most recent AIP grant, received on September 25, 2001, was for $1.4 million to rehabilitate the Airport's terminal apron. In the grant agreement, the Town certified that for a period of twenty years—*i.e.*, through September 25, 2021—it would comply with certain specified assurances. *See Pacific Coast Flyers, Inc. v. County of San Diego*, FAA Dkt. No. 16-04-08, 2005 WL 1900515, at *11 (July 25, 2005) ("Upon acceptance of an AIP grant, the grant assurances become a binding contractual obligation between the airport sponsor and the Federal government."). These included assurances to make the Airport available "for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities," J.A. 61 (Grant Assurance 22(a)), and to "comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance and use of Federal funds . . . including but not limited to . . . Title 49 U.S.C., subtitle VII," *id.* at 53 (Grant Assurance 1(a)).

b. ANCA's Procedural Requirements for Local Laws Limiting Access to Public Airports

Subtitle VII (referenced in Grant Assurance 1(a), at Part B, Chapter 475, Subchapter II) encompasses the Airport Noise and Capacity Act of 1990 ("ANCA"), Pub. L. No. 101-508, 104 Stat. 1388 (recodified at 49 U.S.C. §§ 47521–47534). This statute, which is at the core of plaintiffs' preemption claim, (1) directs the Department of Transportation (which has delegated its authority to the FAA) to establish "a national aviation noise policy," 49 U.S.C. § 47523(a), including "a national program for reviewing airport noise and access restrictions on operations of Stage 2 and Stage 3 aircraft," *id.* § 47524(a); and (2) outlines the requirements of that program. Acting under the authority delegated by the Department of Transportation, the FAA promulgated a national aviation noise policy through 14 C.F.R. Part 161, the "notice, review, and approval requirements," which "apply to *all airports* imposing noise or access restrictions." 14 C.F.R. § 161.3(a), (c) (emphasis added).

ANCA's requirements vary based on the type of aircraft at issue. "Aircraft are classified roughly according to the amount of noise they produce, from Stage 1 for the noisiest to Stage 3 for those that are relatively quieter." *City of Naples*

9

*Airport Auth. v. FAA*, 409 F.3d 431, 433 (D.C. Cir. 2005).[2]  In ANCA, Congress states that airport operators may impose noise or access restrictions on Stage 2 aircraft "only" upon 180 days' notice and an opportunity for comment.  49 U.S.C. § 47524(b).[3]  Local restrictions on Stage 3 aircraft "may become effective only if"

---

[2] In 2005, the FAA promulgated an additional Stage 4 classification for aircraft that operate beneath the noise thresholds specified for Stage 3 and that are, therefore, protected by the same requirements.  *See* Stage 4 Aircraft Noise Standards, 70 Fed. Reg. 38742, 38743 (July 5, 2005).  In 2012, Congress enacted section 506 of the FAA Modernization and Reform Act of 2012, Pub. L. No. 112-95, 126 Stat. 11, 105 (codified at 49 U.S.C. § 47534(a)), which provided for Stage 2 aircraft operations to be phased out by December 31, 2015.

[3]  The relevant provision states that an airport restriction on Stage 2 aircraft may take effect

> only if the airport operator publishes the proposed restriction and prepares and makes available for public comment at least 180 days before the effective date of the proposed restriction—
>
> > (1) an analysis of the anticipated or actual costs and benefits of the existing or proposed restriction;
> >
> > (2) a  description  of  alternative  restrictions;
> >
> > (3) a description of the alternative measures considered that  do  not  involve  aircraft  restrictions;  and

they have either been "agreed to by the airport proprietor and all aircraft operators" or "submitted to and approved by the Secretary of Transportation after an airport or aircraft operator's request for approval." *Id.* § 47524(c)(1).

### c. Federal Preemption of Local Police Power To Regulate Airport Noise

The Town was further advised that, even after expiration of the twenty-year AAIA compliance period—indeed, even if it had never accepted any AIP grants—the Airport would not be "free to operate as it wishes" because the federal statutory limitations applied regardless of whether an airport is subject to grant assurances. J.A. 239–240; *see also id.* at 273 (stating that "Town does not now have 'local control' and seeking FAA grants does not fundamentally change that legal reality," and that "[o]nly way to achieve local control is to close airport").

---

(4) a comparison of the costs and benefits of the alternative measures to the costs and benefits of the proposed restriction.

49 U.S.C. § 47524(b).

11

Such limitations were first acknowledged by the Supreme Court more than 40 years ago in *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624 (1973). Referencing the Supremacy Clause, *see* U.S. Const. art. VI, cl. 2, the Court there concluded that "the pervasive nature of the scheme of federal regulation of aircraft noise"—manifested by the Federal Aviation Act of 1958, Pub. L. No. 85-726, 72 Stat. 731, as amended by the Noise Control Act of 1972, Pub. L. No. 92-574, 86 Stat. 1234, and FAA regulations promulgated thereunder—had completely preempted the states' traditional police power to regulate noise in that area. *Id.* at 633; *see id.* at 638 (reasoning that "pervasive control vested in [federal agencies] under the 1972 Act seems to us to leave no room for local curfews or other local controls").

d.     <u>The ADA Codifies a Proprietor Exception to Preemption</u>

In *City of Burbank*, the Supreme Court specifically did not consider whether the same preemption that applied to local police power also applied to local proprietary authority. *See id.* at 635 n.14 (observing that "authority that a municipality may have as a landlord is not necessarily congruent with its police power"). Since *City of Burbank*, federal courts, including our own, have

12

concluded that municipalities retain some proprietary authority to control noise at local airports, although that role is "extremely limited." *British Airways Bd. v. Port Auth. of N.Y. & N.J.* ("*Concorde II*"), 564 F.2d 1002, 1010 (2d Cir. 1977). We reasoned that, because an airport proprietor "controls the location of the facility, acquires the property and air easements and [can] assure compatible land use," it might be liable to other property owners for noise damage and, thus, has a right "to limit [its] liability by restricting the use of [its] airport." *British Airways Bd. v. Port Auth. of N.Y. & N.J.* ("*Concorde I*"), 558 F.2d 75, 83 (2d Cir. 1977) (citing *Griggs v. Allegheny Cty.*, 369 U.S. 84 (1962)). That right, however, is narrow, vesting the proprietor "only with the power to promulgate reasonable, nonarbitrary and non-discriminatory regulations that establish acceptable noise levels for the airport and its immediate environs." *Id.* at 84. Moreover, such regulations must be "consistent with federal policy; other, noncomplementary exercises of local prerogative are forbidden." *Id.* at 84–85.

Congress codified the so-called "proprietor exception" in the Airline Deregulation Act of 1978 ("ADA"), Pub. L. No. 95-504, 92 Stat. 1705 (codified at 49 U.S.C. § 41713(b)). At the same time that the ADA expressly preempts all

13

state and local laws or regulations "related to a price, route, or service of an air carrier," *id.* § 41713(b)(1), it clarifies that such preemption does not limit "a State, political subdivision of a State, or political authority of at least 2 States that owns or operates an airport served by [federally certified air carriers] from carrying out its proprietary powers and rights," *id.* § 41713(b)(3).

## 2. Litigation Challenging the Town's AIP Grants

In 2003, an unincorporated association of Town residents living near the Airport sued the FAA and Department of Transportation—but not the Town—in the Eastern District of New York, challenging the legality of post-1994 AIP grants to the Town on the ground that, in the absence of a "current layout plan," such grants violated the AAIA, specifically 49 U.S.C. § 47107(a)(16). The litigation concluded in an April 29, 2005 Settlement Agreement, wherein the FAA stipulated that it would not enforce Grant Assurance 22(a)—which provides for nondiscriminatory access to the Airport on reasonable terms—past December 31, 2014, unless the Town received additional AIP funding thereafter. The Settlement Agreement also provided, however, that with three exceptions not relevant here, all other grant assurances, including Grant Assurance 1(a), requiring compliance with federal law, "shall be enforced in full." J.A. 43.

14

### 3. The FAA's Response to the 2011 Bishop Inquiry

On December 14, 2011, then–United States Representative Timothy Bishop, whose district included the Town, submitted questions to the FAA concerning the effect of the Settlement Agreement on the Town's ability to adopt noise and access restrictions at the Airport.

In an unsigned response, the FAA represented that after December 31, 2014, it would not "initiate or commence an administrative grant enforcement proceeding in response to a complaint from aircraft operators . . . or seek specific performance of Grant Assurance[] 22a" unless and until the award of a new AIP grant to the Town. *Id.* at 391. The FAA further stated that its agreement not to enforce meant that, unless the Town wished to remain eligible for future federal grants, it was "not required to comply with the requirements under . . . (ANCA), as implemented by title 14 CFR, part 161, in proposing new airport noise and access restrictions." *Id.* Counsel for the Town received a copy of this communication from the FAA on February 29, 2012, remarking to an FAA attorney that news reports construing the FAA's response as relieving the Town from ANCA compliance "certainly c[ame] as a surprise." *Id.* at 389.

4.      The Town's Enactment of the Challenged Legislation

By 2014, the Town had concluded that its decade-long attempt to develop voluntary noise-abatement procedures for aircraft operators had failed, and that Airport noise was becoming increasingly disruptive.[4]  Relying on the FAA's response to the Bishop inquiry, the Town decided to take official action.

In the late summer of 2014, the Town began to hold public meetings and to collect and analyze data with a view toward adopting regulations to address Airport noise.  At an October 30 Town meeting, a joint citizen-consultant team presented the results of a "Phase I" study on Airport operations, which indicated that (1) helicopter noise generated the majority of complaints; (2) compliance with voluntary procedures—at 15.3%—was low; and (3) complaints peaked during the summer, on weekends, and in response to nighttime operations.  A Phase II study by a private firm confirmed these conclusions and prompted a Phase III analysis of possible regulatory solutions.  The results of the Phase III analysis, reported on February 4, 2015, indicated that three restrictions would

---

[4] In 2014, the Town received a record number of complaints about Airport operations.  Town analysis indicated that between 2013 and 2014, helicopter operations at the Airport—considered particularly disruptive—rose by 47% from 5,728 to 8,396.

address the cause of more than 60% of noise complaints while affecting less than 23% of Airport operations: (1) a mandatory curfew on all aircraft traffic, (2) an "extended" curfew for certain "noisy" aircraft, and (3) a weekly one-round-trip limit on noisy aircraft. Following a period of public comment, as well as communications with various industry constituencies, FAA officials, and members of New York's congressional delegation, the Town, on April 16, 2015, codified the three recommended restrictions on the Stage 2, 3, and 4 aircraft operations that are at issue in this case (the "Local Laws"). *See* Town of East Hampton, N.Y., Code ("Town Code") §§ 75-38, 75-39 (2015).

The Local Laws establish: (1) a curfew prohibiting all such aircraft from using the Airport between 11:00 p.m. and 7:00 a.m. (the "Mandatory Curfew"); (2) an extended curfew on "Noisy Aircraft" starting at 8:00 p.m. and continuing through 9:00 a.m. (the "Extended Curfew");[5] and (3) a two-operations-per-week

---

[5] The Town Code defines "Noisy Aircraft" as "any airplane or rotorcraft for which there is a published Effective Perceived Noise in Decibels (EPNdB) approach (AP) level of 91.0 or greater." Town Code § 75-38(A)(4)(a). The General Aviation Manufacturers Association, as *amicus curiae*, explains that this definition is inconsistent with federal noise standards insofar as both Stage 3 and

(*i.e.*, one round trip) limit on Noisy Aircrafts' use of the Airport during the Season (the "One-Trip Limit"). *See id.* § 75-38(B)–(C). The Local Laws address violations through escalating fines, enforcement costs, injunctive relief, and bans on Airport use. *See id.* § 75-39(B)–(E).

The Town does not dispute that, in enacting the Local Laws, it did not comply with ANCA's procedural requirements. Specifically, although the laws restrict Stage 2 aircrafts' Airport access, the Town did not conduct the requisite analysis set forth in 49 U.S.C. § 47524(b)(1)–(4),[6] much less make such analysis available for public comment at least 180 days before the laws took effect. Nor did the Town seek aircraft operator or FAA approval for laws restricting Stage 3 and Stage 4 aircrafts' Airport access, as required by 49 U.S.C. § 47524(c)(1).

C.    District Court Proceedings

On April 21, 2015, five days after the Local Laws were enacted, plaintiffs filed this declaratory and injunctive-relief action to prohibit enforcement of §§ 75-

---

Stage 4 aircraft, which satisfy the most demanding federal noise requirements, nevertheless constitute "Noisy Aircraft" under the Local Laws.

[6] *See supra* Part I.B.1.b note 3.

18

38 and 75-39 of the Town Code.[7]  In their amended complaint, plaintiffs allege that the Local Laws (1) violate the ADA, AAIA, ANCA, and these statutes' implementing regulations, and, thus, are preempted under the Supremacy Clause; and (2) constitute an unlawful restraint on interstate commerce in violation of the Commerce Clause, *see* U.S. Const. art. I, § 8, cl. 3.

On April 29, 2015, plaintiffs moved for a temporary restraining order, relying exclusively on the preemption prong of their claim.  They argued that the Local Laws violate (1) ANCA, *see* 49 U.S.C. § 47524, insofar as the Town failed to comply with that statute's procedural requirements for the adoption of local noise and access restrictions affecting Stage 2 and Stage 3 aircraft; (2) the AAIA, *see id.* § 47107, insofar as the Local Laws fail to comply with three of the Town's

---

[7] On April 27, 2015, plaintiffs moved pursuant to Fed. R. Civ. P. 42 to consolidate this action with another one that some of them had filed against the FAA in January 2015, seeking a declaratory judgment that (1) the FAA is statutorily obligated to ensure Town compliance with grant assurances until September 25, 2021; and (2) the FAA's 2012 response to Rep. Bishop erroneously interpreted a settlement agreement to imply that the Town had no legal obligation to comply with certain grant assurances, or ANCA itself, after 2014.  *See* Compl. at 25, *Friends of the E. Hampton Airport, Inc. v. FAA*, No. 2:15-CV-441 (JS) (E.D.N.Y. Jan. 29, 2015), ECF No. 1.  The district court reserved judgment on the motion, which plaintiffs subsequently withdrew, and the action has been stayed pending this appeal.

2001 grant assurances; and (3) the ADA, *see id.* § 41713(b), because they are

unreasonable.

The district court conducted a hearing on May 18, 2015, after which, with

the parties' consent, it decided to treat the motion as a request for a preliminary

injunction. The Town agreed to delay enforcement of the challenged laws until

the court ruled on the motion.[8]

On June 26, 2015, the district court preliminarily enjoined the Town's

enforcement of its One-Trip Limit law, but declined to enjoin enforcement of the

---

[8] The FAA also appeared at the hearing, seeking further time to consider whether to take a position on the merits of the case. At that time, FAA counsel maintained that the Town's characterization of the agency's response to Rep. Bishop as a "legal interpretation" was "disingenuous." J.A. 470. Counsel maintained that the FAA was only responding to a hypothetical and not waiving its right to enforce its own regulations. *See id.* at 470–71 (referencing contemporaneous email from FAA staff stating that news reports of its response to Rep. Bishop indicated that the response "is likely being misunderstood"). Insofar as the Town also cited a February 27, 2015 meeting with FAA representatives to support its arguments, FAA counsel stated that the agency had specifically advised the Town that it would be a "listening-only" meeting, at which the FAA would not give advice or render a legal opinion. *Id.* at 480.
We give these statements no weight because the FAA did not thereafter file any papers with or appear again in the district court, nor has it participated in any way in these cross appeals.

Mandatory and Extended Curfew laws. In so ruling, the court observed, first, that neither the AAIA nor ANCA created a private right of action, and plaintiffs could not rely on the Supremacy Clause as an independent source of such an action.[9] Nevertheless, the district court concluded that plaintiffs were entitled to invoke equity jurisdiction to enjoin the challenged laws to the extent the exercise of that jurisdiction was not explicitly or implicitly prohibited by Congress. The court located congressional intent to foreclose equitable enforcement of the AAIA in that statute's comprehensive administrative enforcement scheme. But "nothing in the text or structure" of ANCA supported a similar conclusion as to that statute. *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 152 F. Supp. 3d at 105. Accordingly, the district court ruled that plaintiffs could invoke its inherent equity jurisdiction to bring a preemption claim based on ANCA, but not on the AAIA.

---

[9] Plaintiffs do not challenge these conclusions on appeal and, thus, we have no reason to address them.

Second, the district court found that, absent a preliminary injunction, the Local Laws would cause plaintiffs to suffer irreparable harm.[10]

Third, the district court concluded that plaintiffs' preemption claim was likely to succeed on the merits with respect to the One-Trip Limit law, but not the Mandatory and Extended Curfew laws. In reaching that conclusion, the district court reasoned that ANCA did not necessarily preempt local laws enacted in violation of its procedures because the statute's enforcement provision mandated only the loss of eligibility for further federal funding and for imposition of certain charges.[11] Thus, an ANCA violation did not defeat the

---

[10] The Town does not challenge this finding on appeal and, thus, we have no reason to review it.

[11] On this point, the district court stated as follows:

> [U]nder Section 47526 of ANCA, entitled, "Limitations for noncomplying airport noise and access restrictions," the only consequences for failing to comply with ANCA's review program are that the "airport may not—(1) receive money under [the AAIA]; or (2) impose a passenger facility charge under [49 U.S.C. § 40117]." 49 U.S.C. § 47524. This provision raises an obvious question. If Congress intended to preempt all airport proprietors from enacting noise regulations without first complying with ANCA, why would it also include an enforcement provision mandating the loss of

22

ADA's "proprietor exception" to preemption, and a municipal proprietor's restrictions on airport access remained permissible to the extent they were "reasonable, non-arbitrary and non-discriminatory." *Id.* at 109.[12] On the record presented, the district court determined that the Mandatory and Extended Curfew laws satisfied that standard, but that the One-Trip Limit law did not because it had a "drastic" effect on plaintiffs' businesses, and there was "no indication that a less restrictive measure would not also satisfactorily alleviate the Airport's noise problem." *Id.* at 111–12.

The parties timely filed these interlocutory cross appeals, which we have jurisdiction to review pursuant to 28 U.S.C. § 1292(a)(1).

---

eligibility for federal funding and the ability to impose passenger facility charges? The logical answer is that Congress intended to use grant and passenger facility charge restrictions to encourage, but not require, compliance with ANCA.

*Id.* at 108–09 (brackets in original).

[12] The district court offered "no opinion on whether the FAA has authority to enjoin the Local Laws on the basis that the Airport is still federally obligated and therefore would need to comply with ANCA's procedural requirements." *Id.* at 109 n.10 (citing 49 U.S.C. § 47533 (stating that ANCA does not affect Secretary of Transportation's authority to seek and obtain appropriate legal remedies, "including injunctive relief")).

**II.    Discussion**

   A.    Standard of Review

When, as here, a preliminary injunction "will affect government action taken in the public interest pursuant to a statute or regulatory scheme," the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction. *Red Earth LLC v. United States*, 657 F.3d 138, 143 (2d Cir. 2011) (citations and internal quotation marks omitted). Although we review a district court's decision to grant or deny a preliminary injunction for abuse of discretion, *see Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011), we must assess *de novo* whether the court "proceeded on the basis of an erroneous view of the applicable law," *Chevron Corp. v. Naranjo*, 667 F.3d 232, 239 (2d Cir. 2012); *see Drake v. Lab. Corp. of Am. Holdings*, 458 F.3d 48, 56 (2d Cir. 2006) (reviewing Federal Aviation Act preemption *de novo*); *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 134 (2d Cir. 2014) (reviewing jurisdiction *de novo*).

B.    The Town's Challenge to Equity Jurisdiction

The Town contends that the district court erred in concluding that plaintiffs could invoke equity jurisdiction to enjoin the challenged laws as preempted by ANCA.  On *de novo* review, we identify no error.

1.    The Doctrine of *Ex parte Young* Supports Equity Jurisdiction in this Case

The Supreme Court has "long recognized" that where "individual[s] claim[] federal law immunizes [them] from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted."  *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).  The principle is most often associated with *Ex parte Young*, 209 U.S. 123, 155–63 (1908), which held that the Eleventh Amendment does not bar federal courts from enjoining state officials from taking official action claimed to violate federal law.  Since then, the Supreme Court has consistently recognized federal jurisdiction over declaratory- and injunctive-relief actions to prohibit the enforcement of state or municipal orders alleged to violate federal law.  *See, e.g., Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645–46 (2002) (authorizing suit by telecommunications carriers asserting federal preemption of state regulatory

25

order); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 388 (2000) (enjoining state statute barring certain foreign transactions in face of federal statute imposing conflicting sanctions); *City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. at 638–40 (upholding injunction barring municipal aircraft curfews as subject to federal preemption). Our own court has followed suit. *See, e.g.*, *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 221–22 (2d Cir. 2008) (granting airline trade organization declaratory and injunctive relief against preempted state regulatory statute); *United States v. State of New York*, 708 F.2d 92, 94 (2d Cir. 1983) (relying on "equitable power" recognized in *Ex parte Young* to uphold preliminary injunction against nighttime ban on airport use).

In such circumstances, a plaintiff does not ask equity to create a remedy not authorized by the underlying law. Rather, it generally invokes equity preemptively to assert a defense that would be available to it in a state or local enforcement action. *See, e.g.*, *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 262 (2011) (Kennedy, J., concurring) (invoking *Ex parte Young* involves "nothing more than the pre-emptive assertion in equity of a defense that would otherwise have been available in the State's enforcement proceedings at law");

26

*Fleet Bank, Nat'l Ass'n v. Burke*, 160 F.3d 883, 888 (2d Cir. 1998) (noting that it is "beyond dispute that federal courts have jurisdiction over suits" that "seek[] *injunctive* relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail" (emphasis in original) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983))).  A party is not required to pursue "arguably illegal activity . . . or expose itself to criminal liability before bringing suit to challenge" a statute alleged to violate federal law.  *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 385 (2d Cir. 2015) (citations omitted).

Plaintiffs, who are here threatened with escalating fines and other sanctions under the Local Laws, thus seek to enjoin enforcement on the ground that the laws were enacted in violation of ANCA's procedural prerequisites for local limits on airport noise and access.  Such a claim falls squarely within federal equity jurisdiction as recognized in *Ex parte Young* and its progeny.

2.      ANCA Does Not Limit Equity Jurisdiction

A federal court's equity power to enjoin unlawful state or local action may, nevertheless, be limited by statute.  *See Armstrong v. Exceptional Child Ctr., Inc.*,

27

135 S. Ct. at 1385; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73–74 (1996). The Town does not—indeed, cannot—argue that ANCA expressly precludes actions in equity relying on its statutory requirements. Instead, the Town relies on *Armstrong* to urge us to recognize ANCA's implicit foreclosure of equitable relief. The argument is not persuasive.

In *Armstrong*, the Supreme Court construed a different statute—part of the the Medicaid Act—implicitly to preclude healthcare providers from invoking equity to enjoin state officials from reimbursing medical service providers at rates lower than the federal statute required. The Court located Congress's intent to foreclose such equitable relief in two aspects of the statute. First, federal statutory authority to withhold Medicaid funding was the "sole remedy" Congress provided for a state's failure to comply with Medicaid requirements. *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. at 1385 (citing 42 U.S.C. § 1396c); *see id.* (recognizing that "'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others'" (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001))). Second, even if the existence of a provision authorizing the Secretary of Health and Human Services to enforce the

statute by withholding funds "might not, *by itself*, preclude the availability of equitable relief," it did so "when combined with the judicially unadministrable nature of [the statutory] text." *Id.* (emphasis in original); *see id.* ("It is difficult to imagine a requirement broader and less specific than § 30(A)'s mandate that state plans provide for payments that are 'consistent with efficiency, economy, and quality of care,' all the while 'safeguard[ing] against unnecessary utilization of . . . care and services.'" (citation omitted)). In sum, "[t]he sheer complexity associated with enforcing § 30(A), coupled with the express provision of an administrative remedy, § 1396c, shows that the Medicaid Act precludes private enforcement of § 30(A) in the courts." *Id.*

ANCA cannot be analogized to the Medicaid statute in either of the two ways prompting jurisdictional concern in *Armstrong*. First, as to the identification of an exclusive remedy, there is no textual basis to conclude that the loss of federal funding is the only consequence for violating ANCA. The Town highlights—as the district court did—49 U.S.C. § 47526, which states that an airport may not receive AIP grants or collect passenger facility charges "[u]nless the Secretary of Transportation is satisfied" that, insofar as the airport

29

imposes any noise or access restrictions, those regulations comply with the statute. The Town's assertion that this is the sole available remedy for violating ANCA, however, is defeated by § 47533, which states that, "[e]xcept as provided by section 47524 of this title, this subchapter does not affect . . . the authority of the Secretary of Transportation to seek and obtain legal remedies the Secretary considers appropriate, including injunctive relief." 49 U.S.C. § 47533(3). As already noted, § 47524 provides only limited exceptions to the Secretary's authority to bring suit: as against local Stage 2 aircraft restrictions if the airport proprietor complies with § 47524(b)'s notice-and-comment process;[13] and as against local Stage 3 and 4 aircraft restrictions "agreed to by the airport proprietor and all aircraft operators" or approved by the FAA, *id.* § 47524(c). Thus, § 47533 confirms that Congress did not intend § 47526 to be the only means of enforcing ANCA's procedural requirements. The FAA can employ any legal or equitable remedy necessary to prevent airports from enacting or enforcing restrictions on (1) Stage 2 aircraft *without* utilizing the § 47524(b) process, and on

---

[13] *But see City of Naples Airport Auth. v. FAA*, 409 F.3d at 434–35 (holding that FAA retains power *under AAIA* to withhold AIP funding for airport that imposes unreasonable Stage 2 aircraft restrictions).

(2) Stage 3 and 4 aircraft *without* securing either the § 47524(c) consent of all airport operators or the FAA's own approval. The fact that Congress conferred such broad enforcement authority on the FAA, and not on private parties, does not imply its intent to bar such parties from invoking federal jurisdiction where, as here, they do so not to enforce the federal law themselves, but to preclude a municipal entity from subjecting them to local laws enacted in violation of federal requirements. *See Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d at 222 (pre-enforcement challenge to pre-empted state law presented no "barriers to justiciability") (citing *Ex parte Young*, 209 U.S. at 145–47).

Further support for the conclusion that Congress did not intend for funding ineligibility to be the sole means of enforcing the § 47524(b) and (c) requirements can be located in the twenty-year compliance assurance that airport proprietors must give in return for AIP grants. Such grants, unlike Medicaid funding, involve one-time transfers. Thus, if, as the Town argues, the sole remedy for a proprietor's failure to comply with the § 47524 requirements for local laws is the loss of eligibility for future funding, the proprietor could (1) give a twenty-year assurance of compliance to obtain an AIP grant on one day and,

(2) on the next day, promulgate non-ANCA-compliant laws, relinquishing eligibility for future grants. We cannot conclude that, in those circumstances, Congress intended to foreclose legal or equitable actions to enforce either the statutorily mandated assurances or ANCA's procedural prerequisites for local legislation. *See generally Corley v. United States*, 556 U.S. 303, 314 (2009) (stating that courts must construe statute "so that no part will be inoperative or superfluous, void or insignificant" (internal quotation marks omitted)). Indeed, § 47533 makes plain that Congress did not so intend.

Second, unlike the Medicaid claim at issue in *Armstrong*, plaintiffs' ANCA-based challenge to the Town's Local Laws would not require application of a judicially unadministrable standard. In urging otherwise, the Town relies on 49 U.S.C. § 47524(c), the statutory section detailing various factors that can inform an FAA decision to approve local noise restrictions on Stage 3 aircraft. The Town argues that ANCA compliance is, thus, so much a matter of agency discretion as to signal Congress's intent that the FAA alone—not private individuals—should enforce the statute's terms. The argument fails because § 47524(c) sets forth a simple rule: that airports seeking to impose noise restrictions on Stage 3 aircraft

must obtain either the consent of all aircraft operators or FAA approval. It is "difficult to imagine" more straightforward requirements. *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. at 1385. A federal court can evaluate the Town's compliance with these obligations without engaging in the sort of "judgment-laden" review that the Supreme Court in *Armstrong* concluded evinced Congress's intent not to permit private enforcement of § 30A of the Medicaid Act.[14] *Id.* Indeed, at oral argument before this court, the Town acknowledged that this case does not implicate "the same kind of judicial administrability problem" as *Armstrong*. *See* Oral Argument, June 20, 2016, at 1:26:39–45.

In sum, because (1) the denial of eligibility for federal funding is not the exclusive remedy for an airport proprietor's failure to comply with ANCA's

---

[14] While Stage 2 aircraft operations—addressed in § 47524(b)—were phased out by December 31, 2015, the same conclusion obtains with respect to that subsection. Under § 47524(b), airports must, more than 180 days before a restriction becomes effective, publish the proposed restriction and make available for public comment an analysis of the restriction's costs and benefits, including alternative measures that were considered. As with § 47524(c), judicial administration of subsection (b) is simple: if no such notice has been published for the requisite period, the proposed Stage 2 restriction violates ANCA.

procedural requirements, and (2) those requirements plainly are judicially administrable, we conclude that Congress did not intend implicitly to foreclose plaintiffs from invoking equitable jurisdiction to challenge the Town's enforcement of Local Laws enacted in alleged violation of ANCA. Accordingly, the Town's jurisdictional challenge is without merit.

C.    Plaintiffs' ANCA-Based Preemption Claim

Plaintiffs fault the district court's conclusion that they are unlikely to succeed on the merits of their preemption challenge to the Local Laws. They argue that ANCA's procedural requirements for local restrictions on airport access apply to all public airport proprietors regardless of their federal funding status. Thus, plaintiffs maintain, the Town's disavowal of future federal funding cannot insulate the Local Laws from ANCA's procedural requirements. And enactment of the Local Laws without such procedures cannot be deemed reasonable so as to support a proprietor exception to federal preemption under the ADA. We agree and, therefore, conclude that plaintiffs are entitled to a preliminary injunction barring enforcement of all three Local Laws.

1.  ANCA's Text and Context Establish Procedural Requirements for Local Noise and Access Restrictions Applicable to All Public Airport Proprietors

In considering *de novo* whether ANCA's § 47524 procedural requirements for local noise and access restriction laws apply to all public airport proprietors, or only to those receiving federal funding as the Town contends, we begin with the statute's text because "we assume that the ordinary meaning of the statutory language accurately expresses the legislative purpose." *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1172 (2013) (brackets and internal quotation marks omitted). In deciding "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case," *Roberts v. Sea-Land Servs., Inc.*, 132 S. Ct. 1350, 1356 (2012) (internal quotation marks omitted), we consider "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole," *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 111 (2d Cir. 2015) (internal quotation marks omitted). "If the statutory language is unambiguous and the statutory scheme is coherent and consistent . . . the inquiry ceases." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (internal quotation marks omitted). That is the case with respect to the relevant provisions of § 47524, which employ comprehensive

and unmistakably limiting language in affording airport proprietors some authority to regulate noise.

Subsection (b) states that a local "airport noise or access restriction may include a restriction on the operation of stage 2 aircraft . . . *only if* the airport operator publishes the proposed restriction and prepares and makes available for public comment at least 180 days before the effective date of the proposed restriction" the analysis outlined therein.  49 U.S.C. § 47524(b) (emphasis added).  Similarly, subsection (c) states that "an airport noise or access restriction on the operation of stage 3 aircraft . . . may become effective *only if* the restriction has been agreed to by the airport proprietor and all aircraft operators or has been submitted to and approved by the [FAA] after an airport or aircraft operator's request for approval."  *Id.* § 47524(c)(1) (emphasis added).  The phrase "only if" is unambiguously limiting, identifying procedures that airport proprietors must follow in order to impose any noise or access restrictions on air operations.[15]  At

---

[15] This language reflects the statute as it was re-codified in 1994, when Congress published a reorganized version of Title 49 "without substantive change." Section 1(a), Pub. L. No. 103-272, 108 Stat. 745 (1994).  As originally enacted, the statute provided that "[n]o airport noise or access restriction shall include a

the same time, no statutory language cabins these procedural requirements to

proprietors receiving or maintaining eligibility for federal funds. Thus, the plain

statutory text is fairly read to mandate the identified procedural requirements for

local noise and access restrictions on Stage 2 and 3 aircraft at *any* public airport.

---

restriction on operations of Stage 2 aircraft, *unless* the airport operator" complied with the statute's notice-and-comment requirements. ANCA § 9304(c), Pub. L. No. 101-508, 104 Stat. 1388-381 (1990) (emphasis added). It further established that "[n]o airport noise or access restriction on the operation of a Stage 3 aircraft . . . shall be effective *unless* it has been agreed to by the airport proprietor and all aircraft operators or has been submitted to and approved by the [FAA] pursuant to an airport or aircraft operator's request for approval." *Id.* § 9304(b), 104 Stat. 1388-380–81 (emphasis added). The Supreme Court has "often observed" that similar language is unambiguously mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (construing as mandatory language in 42 U.S.C. § 1997e(a) stating that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until* such administrative remedies as are available are exhausted" (emphasis added)).

Because Congress made clear that the 1994 recodification of § 47524 did not effect any "substantive change"—a representation consistent with the absence of any material difference between the two versions of the statute—the same mandatory conclusion obtains notwithstanding the stylistic revisions. *Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1429 (2014) (internal quotation marks omitted). In any event, we "will not . . . infer[] that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed." *Finley v. United States*, 490 U.S. 545, 554 (1989). There is no such clear expression here.

37

*See City of Naples Airport Auth. v. FAA*, 409 F.3d at 433–34 (stating that airports "must comply" with § 47524(b) to impose Stage 2 aircraft restrictions, and that "subsection (c)'s requirement of FAA approval is not tied to grants; grants or not, no airport operator can impose a Stage 3 restriction unless the FAA gives its approval").

Statutory context further compels this construction. First, the only textual limitation on the aforementioned procedural requirements is that referenced in § 47524(d), a "grandfather" provision that generally exempts local noise restrictions existing prior to ANCA's effective date.

Second, § 47527 shifts liability for "noise damages" from local airport proprietors to the federal government when "a taking has occurred as a direct result of the [FAA's] disapproval" of a proposed restriction. 49 U.S.C. § 47527. Insofar as the proprietor exception to federal preemption rests on an airport operator's potential liability for—and, thus, right to mitigate—noise damage "by restricting the use of his airport," *Concorde I*, 558 F.2d at 83 (citing *Griggs v. Allegheny Cty.*, 369 U.S. at 84), the federal government's assumption of that liability not only undermines the rationale for the exception, but also offsets the

extent to which ANCA constrains local authority. Moreover, no language limits this federal acceptance of liability to airports whose proprietors have received or are eligible for AIP grants. Thus, the general assumption of liability under § 47527 reinforces the conclusion that Congress intended for the requirements of § 47524(b) and (c) to apply generally to all proprietors wishing to impose noise or access restrictions on Stage 2, 3, or 4 aircraft at public airports.

Third, § 47533(3) places no limits—and certainly no funding eligibility condition—on the FAA's statutory authority to enforce the § 47524(b) and (c) procedural requirements.

The Town nevertheless urges us to construe § 47524 in light of § 47526 and to conclude from that funding ineligibility provision that Congress's intent was to "encourage, but not require, compliance" with the former's procedures. Town's Br. 34 (citing *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 152 F. Supp. 3d at 109). We are not persuaded. As explained *supra* at Part III.B.2, § 47526 provides for loss of funding eligibility as *a* consequence of noncompliance with § 47524 procedures. Nothing in § 47526 signals that funding

ineligibility is the *only* consequence of such a procedural violation.[16] The same conclusion obtains with respect to the funding ineligibility effected by § 47524(e) with particular reference to § 47524(c) violations.

In sum, ANCA's text and context unambiguously indicate Congress's intent for the § 47524 procedural mandates to apply to all public airport proprietors regardless of their funding eligibility.

---

[16] We do not think that the title of § 47526 ("Limitations for noncomplying airport noise and access restrictions") can fairly be read in the definitive (*i.e.*, "[*The*] Limitations for . . .") to support the Town's urged conclusion. Precedent instructs that a statute's title "cannot limit the plain meaning of the text," *Pennsylvania Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 212 (1998), and that rule applies with particular force here where the quoted title was not part of the statute as originally enacted in 1990. Rather, it was added as part of the non-substantive 1994 recodification. *Compare* ANCA § 9307, 104 Stat. 1388-382, *with* 49 U.S.C. § 47526. "Congress made it clear" that this recodification "did not effect any 'substantive change.'" *Northwest, Inc. v. Ginsberg*, 134 S. Ct. at 1429. Indeed, the statute's original title, "Limitation on Airport Improvement Program Revenue," is as susceptible to the indefinite as the definite article, *i.e.*, "[*A*] Limitation on . . . " and, thus, cannot be construed to manifest Congress's intent that federal funding ineligibility be the sole consequence of a § 47524(b) or (c) violation.

2. Congress's Intent for ANCA Procedures To Apply Comprehensively and Mandatorily Is Confirmed by Statutory Findings, Legislative History, and Implementing Regulations

Even if text and context did not speak unambiguously to the question, statutory findings, legislative history, and implementing regulations would confirm the conclusion that § 47524(b) and (c) apply comprehensively and mandatorily to all public airport proprietors.

Congress promulgated ANCA based on findings that "community noise concerns have led to uncoordinated and inconsistent restrictions on aviation that could impede the national air transportation system" and, therefore, "noise policy *must* be carried out at the national level." 49 U.S.C. § 47521(2)–(3) (emphasis added). Such findings, which are "particularly useful" in determining congressional intent, *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990); *accord WLNY-TV, Inc. v. FCC*, 163 F.3d 137, 142 (2d Cir. 1998)—and which themselves speak in mandatory terms—undermine the Town's argument that Congress intended for the § 47524(b) and (c) procedures to apply only to noise and access restrictions at some public airports, *i.e.*, those whose proprietors wished to maintain federal funding eligibility. It was by mandating local restriction procedures for all public airport proprietors that Congress could

41

prevent "uncoordinated and inconsistent restrictions" "at the national level," while still allowing "local interest in aviation noise management [to] be considered in determining the national interest." 49 U.S.C. § 47521(1)–(4). Congress's recognition that "revenues controlled by the [federal] government can help resolve noise problems and carry with them a responsibility to the national airport system," *id.* § 47521(6), does not undermine this conclusion. Congress can certainly regulate commerce both by providing monetary incentives for voluntary compliance by some actors, while at the same time allowing for enforcement actions more generally. Nor are we persuaded by the Town's contention that the reference to "noise problems" in the quoted excerpt from § 47521(6) refers to noise restrictions, as opposed to problems created by airport noise. In any event, the finding states only that such revenue control "can *help* resolve" those problems, which comports with a view of funding eligibility as a means—but not the only means—of executing ANCA's policy objectives. *Id.* (emphasis added).

That conclusion is consistent, moreover, with ANCA's legislative history. ANCA was adopted after Congress determined that voluntary financial and

42

legal incentives established by the Aviation Safety and Noise Abatement Act of 1979, Pub. L. No. 96-193, 94 Stat. 50 (recodified at 49 U.S.C. §§ 47501–47510), had proved insufficient to secure airport conformity to federal aviation policy respecting noise. Notwithstanding these incentives, and the federal funding scheme established by the AAIA in 1982, Congress perceived that a "patchwork quilt" of local noise restrictions continued to stymie the airport development required for the nation's aviation. *See* 136 Cong. Rec. S13619 (Sept. 24, 1990) (statement of Sen. Ford).[17] Thus, it was to resolve a problem that persisted despite federal financial incentives that Congress enacted regulatory legislation

---

[17] Senator Wendell H. Ford, the original sponsor of the legislation ultimately enacted as ANCA, explained as follows:

> No issue facing air transportation is more important than settling the noise debate. The greatest obstacle to expanding airports and increasing air carrier service is the opposition to aircraft noise and not the cost of building more runways and establishing more technologically advanced air traffic control. . . . Airports are now telling the airlines what kind of aircraft they can fly as a method of regulating noise. Some airports have enforced restrictions on the type of aircraft, the number of operations and the time of day for operations.

136 Cong. Rec. S13619 (Sept. 24, 1990).

permitting local noise and access restrictions at public airports "only if" the restrictions conformed to the procedural mandates of § 47524(b) and (c).

Indeed, many of the legislators who opposed ANCA's enactment objected to the statute's mandatory nature precisely because it meant that local noise restrictions not enacted under the specified procedures would be preempted by federal law. *See, e.g.*, 136 Cong. Rec. S15819 (Oct. 18, 1990) (statement of Sen. Durenberger) ("This [legislation] would have far reaching consequences for the millions of Americans living beneath the landing and takeoff flight paths of our Nation's airports. In many communities, the pending aviation noise legislation would effectively preempt existing local aviation noise controls."); *id.* at S15820 (statement of Sen. Sarbanes) ("[T]his legislation has far-reaching ramifications for cities and towns throughout the country. Many of these communities have already been through the long, and often painful process of developing comprehensive noise standards for their airports . . . balancing the economic development interests of those communities and the desire to provide a healthy environment free of noise pollution . . . ."). This belies the suggestion that in ANCA, Congress was, yet again, seeking only to give incentives for compliance

44

by those seeking federal funding. Rather, it confirms mandated procedures applicable to all proprietors seeking to impose noise or access restrictions at public airports.

Finally, even if text, context, findings, and history did not speak so plainly, any ambiguity would be resolved by the FAA's interpretation of § 47524 to mandate procedural compliance regardless of funding status. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 844 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer."). The FAA's Part 161 regulations state that "notice, review, and approval requirements set forth in this part apply to *all airports* imposing noise or access restrictions" affecting Stage 2 or Stage 3 airport operations. 14 C.F.R. §§ 161.3(c), 161.5 (emphasis added). They admit no exception for airports not maintaining federal funding eligibility. Rather, they employ comprehensive and mandatory language. *See id.* § 161.205(a) ("*Each* airport operator proposing a noise or access restriction on Stage 2 aircraft operations *shall* prepare the [specified analysis] and make it available for public comment . . . ." (emphases added)), § 161.303(a)

("*Each* airport operator or aircraft operator . . . proposing a Stage 3 restriction *shall* provide public notice and an opportunity for public comment, as prescribed in this subpart, before submitting the restriction to the FAA for review and approval." (emphases added)).  Further, the FAA regulations state, in no uncertain terms, that "the procedures to terminate eligibility for airport grant funds and authority to impose or collect passenger facility charges for an airport operator's failure to comply with [ANCA] . . . may be used *with or in addition to* any judicial proceedings initiated by the FAA to protect the national aviation system and related Federal interests."  *Id.* § 161.501(a) (emphasis added).

In sum, the statutory findings, legislative history, and implementing regulations accord with what we have identified as the plain meaning of ANCA's text.  We therefore construe § 47524(b) and (c) to mandate procedures for the enactment of local noise and access restrictions by any public airport operator, regardless of federal funding status.  Because these procedures are mandatory and comprehensive, we further conclude that local laws not enacted in compliance with them (which the Town concedes the Local Laws challenged in this case were not) are federally preempted.  *See Hillman v. Maretta*, 133 S. Ct.

46

1943, 1949–50 (2013) ("State law is pre-empted to the extent of any conflict with a federal statute." (internal quotation marks omitted)); *In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98, 109–10 (2d Cir. 2016) (recognizing that such conflict occurs when, *inter alia*, "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (internal quotation marks omitted)).

Accordingly, plaintiffs are likely to succeed on their preemption claim and are entitled to an injunction prohibiting the Town's enforcement of each of the three challenged Local Laws.

3.  <u>*National Helicopter* Warrants No Different Preemption Conclusion</u>

*National Helicopter Corp. of America v. City of New York*, 137 F.3d 81 (2d Cir. 1998), relied on by the Town as well as the district court, does not warrant a different conclusion on preemption.

In that case, the parties cross appealed the partial grant and partial denial of an injunction barring New York City from restricting operations at Manhattan's East 34th Street Heliport.  Plaintiff helicopter operator "National" argued that the "regulation of airports is a field preempted by federal law," *id.* at

47

84, while the City maintained that its restrictions represented a lawful exercise of

its power as the Heliport's proprietor, *id.* at 88.[18]

---

[18] Preliminary to ruling, the court provided a general outline of how the proprietor exception fits within the ADA's general preemption of local laws pertaining to airline operations:

> Congress preempted state and local regulations "related to a price, route or service of an air carrier" when it passed § 1305(a) of the Airline Deregulation Act, now recodified at 49 U.S.C. § 41713(b)(1) (1994). *Cf. id.* § 40101, *et seq.* (1994) (Federal Aviation Act); *id.* § 44715 (1994) (Noise Control Act); *id.* § 47521, *et seq.* (1994) (Airport Noise and Capacity Act) (acts implying preemption of noise regulation at airports).

> In enacting the aviation legislation, Congress stated that the preemptive effect of § 1305(a) did not extend to acts passed by state and local agencies in the course of "carrying out [their] proprietary powers and rights." *Id.* § 41713(b)(3). Under this "cooperative scheme," Congress has consciously delegated to state and municipal proprietors the authority to adopt rational regulations with respect to the permissible level of noise created by aircraft using their airports in order to protect the local population. *See Concorde I*, 558 F.2d at 83–84 (discussing the 1968 amendment to Federal Aviation Act and Noise Control Act legislative history in which Congress specifically reserved the rights of proprietors to establish regulations limiting the permissible level of noise at their airports); S. Rep. No. 96–52, at 13 (1980), *reprinted in* 1980 U.S.C.C.A.N. 89, 101

The Town urges us to conclude from the fact that *National Helicopter* found certain of the challenged restrictions to fall within the proprietor exception—despite the City's apparent failure to comply with ANCA procedures—that this court has necessarily, if not explicitly, decided that ANCA procedures do not

> (proclaiming that the Aviation Safety and Noise Abatement Act was not "intended to alter the respective legal responsibilities of the Federal Government and local airport proprietors for the control of aviation noise") . . . .
>
> Hence, federal courts have recognized federal preemption over the regulation of aircraft and airspace, subject to a complementary though more "limited role for local airport proprietors in regulating noise levels at their airports." *City and County of San Francisco v. FAA*, 942 F.2d 1391, 1394 (9th Cir. 1991). Under this plan of divided authority, we have held that the proprietor exception allows municipalities to promulgate "reasonable, nonarbitrary and non-discriminatory" regulations of noise and other environmental concerns at the local level. *Concorde I*, 558 F.2d at 84 (regulations of noise levels); *see also Western Air Lines, Inc. v. Port Auth. of N.Y. & N.J.*, 658 F. Supp. 952, 957 (S.D.N.Y. 1986) (permissible regulations of noise and other environmental concerns), *aff'd*, 817 F.2d 222 (2d Cir. 1987).

*Id.* at 88–89.

limit the scope of the ADA's proprietor exception to federal preemption, thereby foreclosing a contrary decision in this case. The argument is unpersuasive for several reasons.

First, "a *sub silentio* holding is not binding precedent." *Getty Petroleum Corp. v. Bartco Corp.*, 858 F.2d 103, 113 (2d Cir. 1988) (internal quotation marks omitted); *see also United States v. Hardwick*, 523 F.3d 94, 101 n.5 (2d Cir. 2008) (explaining that government concession in prior appeal that certain evidence should not be considered in evaluating sufficiency did not bind later panel because first panel "did not independently analyze whether this was the proper course"); *United States v. Johnson*, 256 F.3d 895, 916 (9th Cir. 2001) (*en banc*) (reasoning that court is not bound by earlier "statement of law . . . uttered in passing without due consideration of the alternatives, or where it is merely a prelude to another legal issue that commands the panel's full attention").

Second, *National Helicopter* is distinguishable from this case in that the court there understood National "not [to] dispute the viability of the proprietor exception." *National Helicopter Corp. of Am. v. City of New York*, 137 F.3d at 89. Rather, it understood National to argue that the exception did not apply because

the City's challenged actions were taken under its police power rather than its proprietary authority. *See id.* In resolving *that* dispute favorably to the City, this court did not address whether and to what extent ANCA's procedural requirements cabined the reasonable exercise of a municipality's proprietary authority over airport noise, much less did it decide whether local restrictions imposed in the absence of ANCA procedures were federally preempted. Indeed, the court mentioned ANCA only in passing, at the end of a string cite comparing the ADA with other "acts implying preemption of noise regulation at airports." *Id.* at 88.[19]

---

[19] We need not ourselves decide whether National's briefing might have been understood differently. *See generally* Plaintiff-Appellee-Cross-Appellant Br. 40, *National Helicopter Corp. of Am. v. City of New York*, 137 F.3d 81 (2d Cir. 1998) (arguing for affirmance of injunction on alternative ground that ANCA "preempts restrictions on Stage 2 and Stage 3 aircraft that were imposed without following ANCA's required procedures and cost-benefit calculations"). We consider only whether the panel in *National Helicopter* in fact decided whether ANCA's procedural requirements inform the proprietor exception to ADA preemption. We conclude that *National Helicopter* did not decide that question.

In any event, consistent with our practice in such circumstances, we have circulated this opinion to all active members of this court prior to filing. *See Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 67 & n.9 (2d Cir. 2009).

What the court did acknowledge, however, was that the role preserved for local airport proprietors in regulating noise levels is a "limited" one. *Id.* To the extent local restrictions must be "reasonable, nonarbitrary, and non-discriminatory," *id.* (internal quotation marks omitted), nothing in *National Helicopter* suggests that an airport proprietor can satisfy these criteria if he fails to comply with mandated procedures of federal law—such as ANCA—for the enactment of such restrictions. To the contrary, actions taken in violation of legal mandates are, by their nature, unreasonable and arbitrary. *See generally Austin v. U.S. Parole Comm'n*, 448 F.3d 197, 200 (2d Cir. 2006) (noting that committing "procedural error" effects result that is "unreasonable . . . and therefore . . . in violation of law"); *Rodriguez v. Holder*, 683 F.3d 1164, 1170 (9th Cir. 2012) (observing that factual findings made without following regulations constitute error of law); *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1368 (11th Cir. 2008) ("[A]n agency's failure to follow its own regulations and procedures is arbitrary and capricious.").

Accordingly, we conclude that *National Helicopter* does not support the conclusion that plaintiffs are unlikely to succeed on their preemption claim.

4. A Preemption Conclusion Does Not Transform Federal Aviation Law Contrary to Congress's Intent

The Town further argues that construing ANCA to preempt the challenged Local Laws would effectively "invalidat[e] the proprietor exception" to preemption expressly reserved by Congress in the ADA. Town's Reply Br. 28. Our ruling does no such thing.

In § 47524, Congress itself cabins airport operators' proprietary authority by mandating certain procedures for the enactment of local noise and access restrictions. By 1990, Congress had concluded that, at the same time that "local interest in aviation noise management shall be considered in determining the national interest," 49 U.S.C. § 47521(4), the exercise of proprietary authority could not be allowed to produce a patchwork of "uncoordinated and inconsistent" airport restrictions that impede the national transportation system, 136 Cong. Rec. S13619 (Sept. 24, 1990) (statement of Sen. Ford). Thus, ANCA's procedural requirements are properly understood to refine what can constitute a "reasonable" exercise of the proprietary authority reserved by the ADA. *See National Helicopter Corp. of Am. v. City of New York*, 137 F.3d at 88–89 (recognizing ADA to reserve "a complementary though more limited role for airport

53

proprietors in regulating noise levels at their airports" by promulgating "reasonable, nonarbitrary, and nondiscriminatory" regulations for "noise and other environmental concerns" (internal citations and quotation marks omitted)). Local laws not enacted in compliance with ANCA procedures cannot claim to be a reasonable exercise of such authority and, therefore, the federal preemption of such laws does not invalidate reserved proprietary authority contrary to Congress's intent.

Nor does such a preemption conclusion "dramatically enlarge the FAA's role in a manner that Congress never intended." Town's Reply Br. 31. Indeed, the Town has failed to demonstrate that events since ANCA's enactment have belied the FAA's prediction that the statute would not impose substantial burdens on small public airports. *See* Notice and Approval of Airport Noise and Access Restrictions, 56 Fed. Reg. 8644, 8661–62 (Feb. 28, 1992) (codified at 14 C.F.R. pt. 161). Insofar as the Town asserts that the reason only one proprietor has applied for FAA approval to impose noise restrictions on Stage 3 aircraft is because of the "agency's . . . vigorous opposition to *any* airport use restrictions," J.A. 240 (emphasis in original), the assertion is conclusory and hardly

demonstrates that, if more applications were filed, the agency would arbitrarily withhold consent, or that courts would fail to correct any abuse. No more convincing is the Town's assertion that concerns of time and cost have resulted in only one airport successfully imposing restrictions on certain aircraft operations. *See id.* To the extent the process is inherently burdensome, that decision was, in the first instance, Congress's, and not a reason for courts to excuse a non-complying party from preemption. To the extent a party considers itself unduly burdened by FAA implementation of ANCA's procedures, its remedy is an action to curb agency excess, not relief from preemption.

Thus, we reject the Town's contention that deeming local laws enacted in violation of ANCA's procedural mandates in § 47524(b) and (c) to be preempted would radically transform federal aviation law by invalidating the proprietor exception reserved in the ADA. Rather, we conclude that ANCA establishes what Congress thought were necessary procedures for a reasonable exercise of proprietary authority within the national aviation system.

The Local Laws at issue not having been enacted according to the procedures mandated in 49 U.S.C. § 47524(b) and (c), the Town cannot claim the

protection of the proprietor exception from federal preemption. Because

plaintiffs are thus likely to succeed on their preemption claim, they are entitled to

a preliminary injunction barring enforcement of all three challenged Local

Laws.[20] Accordingly, we affirm the challenged order to the extent it granted an

injunction as to the One-Trip Limit Law, we vacate the order to the extent it

denied an injunction as to the Mandatory and Extended Curfew Laws, and we

remand the case for entry of a preliminary injunction as to all three laws and for

further proceedings consistent with this opinion.

---

[20] In this appeal, the Town does not contest the other factors required for a preliminary injunction.

**III.   Conclusion**

To summarize, we conclude as follows:

1.      The district court properly exercised federal equity jurisdiction to hear plaintiffs' claim that enforcement of the challenged Local Laws is barred by preemptive federal aviation law.

2.      Federal law mandating procedures for the enactment of local laws restricting noise and access to public airports, *see* 49 U.S.C. § 47524(b) and (c), applies to public airports without regard to their eligibility for federal funding.

3.      Because it is undisputed that the defendant Town enacted the Local Laws at issue without complying with § 47524 procedures, those Local Laws are federally preempted, and plaintiffs are entitled to a preliminary injunction barring their enforcement.

Therefore, the challenged district court order is AFFIRMED IN PART and VACATED IN PART, and the case is REMANDED to the district court for it to enter a preliminary injunction barring enforcement of all three laws and for further proceedings consistent with this opinion.